IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO


MICHELLE LOPEZ,

       Plaintiff,

v.                                                   CIV. No. 08-806 LH/ACT

CITY OF ALBUQUERQUE, *et al.,*

       Defendants.


## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on a motion entitled, "Defendant City of Albuquerque's Opposed Motion for Clarification of the Court's Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment [Doc. 62]"(Docket No. 67).  In this motion, Defendant City of Albuquerque ("the City") requests that the Court clarify its ruling on the applicability of an affirmative defense established by the United States Supreme Court in *Burlington Industries v. Ellerth*, 524 U.S. 742 (1998) and *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998) (the *Ellerth/Faragher* defense). In the opinion that follows, the Court has clarified that, based upon the record currently before it, the *Ellerth/Faragher* defense does not operate to shield the City from liability on the remaining claim of hostile work environment.


## I.  Discussion

### A.  Vicarious Liability Under Title VII

Counts I and VI,  claims for a hostile work environment under Title VII and under the New

Mexico Human Rights Act, are the only remaining claims in this lawsuit.  In evaluating Defendants' motion for summary judgment on this issue, this Court concluded that Lopez had established a genuine disputed issue of fact as to the pervasiveness of the sexually-charged hostility in the work environment, sufficient to be entitled to have a jury decide the issue.  Memorandum Opinion and Order ("Mem.Op.") at 22 (Docket No. 62).

Although there has been no actual legal determination that a hostile work environment existed, at this juncture the City is asking the Court, as a matter of law, to conclude that even if such an environment were found to exist, there would be no basis for vicarious liability of the City.  The Court notes that the City did not specifically plead the affirmative defense of a lack of vicarious liability in its Answer (Docket No. 9).  Because it was raised in Defendants' motion for summary judgment, and briefed without objection by both parties, the defense has not been waived however. 2 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 8.08[3] (3D ED. 1997).  In its prior Memorandum Opinion and Order, the Court inadvertently overlooked the issue of whether or not this defense operates to bar the hostile work environment claim.  It is therefore appropriate, and no unfair prejudice will result to Lopez, for the Court to consider this issue now.

In order for an employer to raise the *Ellerth/Faragher* defense, there must have been no tangible employment action resulting from the supervisor's harassing conduct.  *Ellerth* at 765.  A tangible employment action "requires an official act of the enterprise" against the plaintiff, and constitutes a significant change in employment status, such as "hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."  *Id*. at 761.  A tangible employment action usually "inflicts direct economic harm" and "in most cases is documented in official company records, and may be subject to review by higher level supervisors."  *Id*. at 762.  Once the employer shows that no tangible employment action was

2

taken by the harassing supervisor against the plaintiff, the employer must establish, by a preponderance of the evidence, that (1) it "exercised reasonable care to prevent and correct promptly any sexually harassing behavior," and (2) "the employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Id*. at 765.

### (1) Tangible Employment Action

The City argues in its motion for clarification that this Court dismissed Plaintiff's claim that she suffered an adverse employment action, and that this "would seem to indicate that the *Ellerth/Faragher* defense is available to the City in this case."  Mot. at 2.  The first part of this supposition is accurate: in its prior Memorandum Opinion and Order, the Court concluded that Lopez did not, for purposes of her retaliation claim, make a *prima facie* showing that she experienced a materially adverse employment action.  Mem.Op. at 30.  A "tangible employment action" is, however, legally distinct from a "materially adverse employment action."  *See Hillig v. Rumsfeld*, 381 F.3d 1028, 1031-32 (10th Cir. 2004)(discussing limited scope of *Ellerth/Faragher*, and holding district court erred using *Ellerth/Faragher* definition of tangible employment action to delineate prima facie case of retaliation).

Despite the City's misused terminology, the Court agrees with the City as to the effect of the evidence on this issue.  That is, viewed in the light most favorable to Lopez, the evidence does not support a conclusion that she experienced a tangible employment action, as defined herein.  Arguing against the applicability of this affirmative defense in her response to the motion for summary judgment, Lopez asserted that she suffered a de facto demotion, and loss of key job responsibilities as well as unreasonable monitoring, scrutinizing and investigation of her activities and performance. Pltf's Resp. at 22, Docket No. 48.  A review of the record however, shows that there is no evidence

3

that she suffered either economic harm or any significant change to her employment status,  and she was never officially demoted.  Mem.Op. at 4.  "Lopez had no change in title, pay or benefits, nor was she disciplined, suspended or reprimanded in any way."  Mem.Op. at 28.  Lopez has not demonstrated a genuine issue of material fact regarding the taking of a tangible employment action against her, based on Padilla's alleged sexual harassment.  Accordingly, the Court will consider the City's presentation of the *Ellerth/Faragher* affirmative defense to vicarious liability.

### (2) The City's Exercise of Reasonable Care to Prevent and Correct Promptly Any Sexually Harassing Behavior

It is the City's first burden to establish that there is no genuine issue of fact that the City took reasonable care to prevent any sexually harassing behavior.  In its ruling on summary judgment, the Court found: "At all relevant times, the City had in force a policy prohibiting employees from engaging in sexual harassment, discrimination and retaliation. . . . .  Lopez was aware of this policy, and of her right as an employee, and obligation as a supervisor, to report such conduct."  Mem.Op. At 8 (Docket No. 62).  In its motion for summary judgment, the City mentions this policy, which is some proof of an effort by the City to prevent sexual harassment before it occurred.  Defts' MSJ at 17-18 (Docket No. 40).

In her response brief, Lopez contends that material facts are in dispute regarding the first prong of the City's burden of proof.  She contends that the City has failed to demonstrate that it used reasonable care to prevent Padilla's sexually harassing behavior and that the facts show that the City failed to conduct a background check on Padilla, failed to respond to information that Padilla was behaving inappropriately with respect to the investigation at 311, gave Padilla unbridled authority to work in and "clean up" Communications, which is staffed and managed by a majority of women, and failed to ensure that Padilla was supervised while at the 911 Center.  Pltf's Resp. at 22-23

(Docket No. 48).

In Plaintiff's Statement of Additional Facts in Dispute[1], Lopez outlines the following evidence she contends relates to the element of whether or not the City exercised reasonable care to prevent sexually harassing behavior:  a background investigation of Padilla by the City[2] indicated that there were complaints of inappropriate comments of a sexual nature by Padilla (Chavez Depo., Ex. 10 at 31); shortly after Padilla was assigned to the 911 Center, Chavez was informed that there had been some complaints about Padilla either about performance at previous employers, or at 311, or both  (*Id*. at 45);  Castro was advised of the inappropriate conduct that Padilla exhibited toward Lopez in 2006  (Lopez Depo., Ex. 2 at 112); a background check on Padilla was not ordered until February or March of 2007, after Padilla started as a supervisor at the 911 Center (Casey Depo., Ex. 17 at 4); Bob Casey, an investigator for the City, learned that there were prior investigations and incidents of sexual harassment involving Padilla (Casey Depo., Ex. 17 at 15, 20); City EEO representative Baldwin learned, either through her investigation at 311 or at the 911 Center, that there were sexual harassment type problems in Padilla's past employment (Ex. 19 at 6, 7).

In the City's reply brief on the summary judgment issue, the City concedes that it did not perform a background check on Padilla before permitting him to work at the 911 Center, but attempts to discount this fact by stating that a background check would not have revealed any information that would have disqualified Padilla from employment anyway.  Without reference to any factual support in the record, the City states that the "background check which was eventually conducted in March 2007 revealed that Padilla had no disqualifying criminal offenses and that he

---

[1]  Pltf's Resp. at 11-13; (Docket No. 48).

[2]  The time frame of this occurrence of allegedly inappropriate comments of a sexual nature is unclear in this deposition testimony.

had positive references from his prior employers." Reply at 11 (Docket No. 53).  Again, without factual support, the City argues that the investigation at 311 did not involve allegations of sexual harassment, but that it had to do with Padilla allegedly providing interview questions to a job applicant.  The City argues that no sexual harassment complaints were made to the City against Padilla until the March 7, 2007 EEO complaint, of which Lopez was a part.

Having considered the evidence, the Court concludes that there is a question of fact as to whether the City exercised reasonable care to *prevent* any sexually harassing behavior by Padilla, Lopez's supervisor.  This is simply not a case where the City has demonstrated an absence of material fact with respect to whether it exercised reasonable care to prevent sexual harassment. It is not at all clear exactly *what* the City knew *when*, about sexually harassing behavior of Padilla, prior to hiring him, prior to transferring him to the 911 Center, and prior to the filing of the March 7, 2007 formal written complaint.  It is also unclear what actions Defendant actually took to prevent the alleged harassment, other than promulgating an anti-harassment policy.  Because the City has not met its burden of proof, the Court concludes that the City is not, based on the current record before the Court, shielded from liability on the remaining claim of hostile work environment, by the *Ellerth/Faragher* defense.

Given this conclusion, it is unnecessary at this time for the Court to address the other elements of the defense, that is, whether the City exercised reasonable care to promptly correct any sexually harassing behavior, or whether Lopez unreasonably failed to take advantage of any preventive or corrective opportunities provided by the City.  *See Cadena v. Pacesetter Corp.*, 224 F.3d 1203, 1208 (10th Cir. 2000)(failure to establish either element of the affirmative defense will defeat summary judgment in favor the employer).

6

**B.  Lopez's Motion for Reconsideration of the Court's Dismissal of Her Retaliation Claim**

Lopez filed Plaintiff's Response to Defendant City of Albuquerque's Opposed Motion for Clarification (Docket No. 70) on August 9, 2010.  The Court has considered the portion of the response that discusses the affirmative defense, and has taken these arguments into account in the ruling contained above.

The remaining portion of this response is directed at asking the Court to reconsider its grant of summary judgment to Defendants on Lopez's Title VII retaliation claim.   The Court construes this as a request to revisit its earlier ruling.  *See Jones v. Bernanke*, 557 F.3d 670, 677-78 (D.C.Cir. 2009).  Motions for "reconsideration" are not granted absent "highly unusual circumstances."  Such motions should not provide litigants with an opportunity for a "second bite at the apple."  *See Sequa Corp. v. GBJ Corp*., 156 F.3d 136, 144 (2d Cir. 1998).

One stated reason for this request is that, if the Court reconsiders its denial of summary judgment on Lopez's hostile work environment claims, as requested by the City, it should also reconsider its ruling that was adverse to Lopez on her retaliation claim.[3]  As noted above, the only reason that the Court has decided to now consider the City's motion for clarification, is because the Court previously  inadvertently overlooked the vicarious liability affirmative defense, raised by the City.  Lopez has no similarly compelling reason for this Court to analyze her arguments that were adequately addressed in the Court's prior ruling.

The rest of Lopez's response basically restates the same evidence that was considered by the Court before rendering its prior Memorandum Opinion and Order, Lopez arguing that "some of the

---

[3]  For reasons that are unclear to the Court, "Plaintiff contends that it would be improper to reconsider the hostile work environment claims without also reconsidering the related retaliation claims."  Pltf's Resp. at 3 (Docket No. 70).

facts and the reasonable inferences from the facts were construed against her rather than in her favor."  Pltf's Resp. at 3 (Docket No. 70).

Lopez's remaining arguments are basically a rehashing, albeit in somewhat different form, of the same arguments already addressed and rejected by this Court.  In many instances, Lopez's arguments in opposition to summary judgment, cited no factual support in the record, but were simply unsubstantiated allegations and statements of counsel.  This approach is inadequate to defeat a motion for summary judgment.  *See* FED.R.CIV.P. 56(e)(2)("When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial.  If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.")

**WHEREFORE,** having considered "Defendant City of Albuquerque's Opposed Motion for Clarification of the Court's Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment [Doc. 62]"(Docket No. 67), the Court has clarified that the *Ellerth/Faragher* affirmative defense, does not, based upon the record currently before the Court, operate to bar Lopez's remaining claims in this lawsuit for a hostile work environment under Title VII and under the New Mexico Human Rights Act.

**FURTHERMORE,** Lopez's motion for reconsideration of the Court's dismissal of her retaliation claim, contained in her  Response to Defendant City of Albuquerque's Opposed Motion for Clarification (Docket No. 70), is **denied.**

IT IS SO ORDERED.

_____

**SENIOR UNITED STATES DISTRICT COURT JUDGE**

8