# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

MICHELLE LOPEZ,

       Plaintiff,

v.                                                  CIV. No. 08-806 LH/ACT

CITY OF ALBUQUERQUE,

       Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on a Motion and Memorandum in Support of Motion for Plaintiff's Attorneys' Fees filed December 1, 2010 (Docket No. 143) and Plaintiff's Motion to Supplement Motion for Attorney's Fees filed on January 10, 2011 (Docket No. 152). The Court, having considered these motions, the materials filed in support thereof, as well as the responsive documents and all relevant authorities, concludes in its discretion that Plaintiff Michelle Lopez is entitled to paralegal and attorney fees in the amount of $94,650.25 plus gross receipts taxes in the amount of $6,625.51 for a total award of $101,275.76.

## I.  Background

Plaintiff has been employed at the City of Albuquerque 911 Call Center since 1994.  She brought suit against three City of Albuquerque employees and the City of Albuquerque ("the City") in September of 2008 when she filed a Complaint for Employment Discrimination, Retaliation, and Civil Rights Violations (Docket No. 1).  Her alleged claims arose under 42 U.S.C. § 1983, 42 U.S.C. § 2000e, *et seq*. ("Title VII"), and the New Mexico Human Rights Act.  On July 7, 2010, this Court entered partial summary judgment for Defendants, dismissing Plaintiff's claims for disparate

treatment and retaliation under Title VII, as well as claims under Section 1983 for denial of equal protection, supervisory and municipal liability, procedural due process, and retaliation (Docket No. 62).  The Court dismissed all claims against Defendants Schultz and Chavez.  Defendant Padilla was dismissed pursuant to a joint request from the parties (Docket No. 61).  Plaintiff's claims, against the City only, for hostile work environment under Title VII and under the New Mexico Human Rights Act, remained in the lawsuit and proceeded to a 4 day jury trial, from October 26-29, 2010.

The jury found in favor of Plaintiff on her hostile work environment claim.  On the verdict form, the jury found that the hostile work environment proximately caused damage to Plaintiff and that she sustained what the jury specified as "nominal (out of pocket medical costs to date)" in the amount of $1,200.  This amount correlated with Plaintiff's testimony as to her out-of-pocket expenses for psychological therapy. Final Judgment was entered on November 2, 2010.  Plaintiff subsequently filed a motion for costs (Docket No. 142) as well as this original motion and a supplemental motion for attorney fees (Docket No. 152).  Briefing on the attorney fees issue was completed on January 26, 2011 (Docket No. 158).

In her original and supplemental motions for attorney fees, Plaintiff seeks the following:[1]

| **Name** | **Hours** | **Hourly Rate** | **Total** |
|---|---|---|---|
| Robert J. Gorence | 131.2 | $300.00 | $39,360.00 |
| Louren Oliveros | 316.15 | $185.00 | $58,487.75 |
| Paralegals | 21.5 | $75.00 | $1,612.50 |
| **SUBTOTAL:** (not including gross receipts tax) | | | $99,460.25 |

---

[1] These figures do not include any amounts for gross receipts tax ("GRT").

## II.  Legal Discussion

Both of the applicable fee shifting statutes at issue in this case specifically provide that an award of fees to a prevailing plaintiff is a matter left to the trial court's discretion.  *See* 42 U.S.C. § 2000e-5(k)("the court, in its discretion may allow the prevailing party. . . a reasonable attorney's fee (including expert fees) as part of costs . . ."); NMSA 1978 § 28-1-13(D)("if the complainant prevails, the court in its discretion may allow actual damages and reasonable attorney fees. . . ").

### A.  Prevailing Party Status of Plaintiff

Given this statutory language, the Court must first determine whether or not Plaintiff is to be considered a "prevailing party."  "[A] plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff."  *Farrar v. Hobby*, 506 U.S. 103, 111-112 (1992).  In *Farrar*, the Supreme Court easily concluded that a plaintiff who obtains only nominal damages is nevertheless a prevailing party. 10 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 54.171[3][c] (3d ed. 2010).  A money judgment in favor of the plaintiff for any amount modifies the defendant's behavior in a way that benefits the plaintiff by forcing the defendant to pay an amount of money that would not otherwise be paid.  Even a nominal damage award alters the legal relationship between the parties and is therefore sufficient to make the plaintiff a prevailing party.  *Farrar*, 506 U.S. at 111-113.

"A plaintiff who 'succeed[ed] on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit' is a 'prevailing party.' " *Case v. Unified Sch. Dist. No. 233, Johnson County*, 157 F.3d 1243, 1249 (10th Cir. 1998)(quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433(1983)(internal quotations omitted, alteration in original).  The City does not dispute,

and the Court finds, that Plaintiff was a prevailing party in this matter.

**B.  Reasonableness of Fees**

**1.  Entitlement to Fees**

The Court must next determine whether or not Plaintiff achieved enough success to be entitled to an award of attorney's fees at all.  The degree of success is the most critical factor in setting the amount of the fee.  In *Lippoldt v. Cole*, 468 F.3d 1204, 1222 (10th Cir. 2006), the Tenth Circuit held that to determine the relevant indicia of success and to decide whether or not a plaintiff achieved a technical success only, the trial court must apply the three-part analysis identified by Justice O'Connor in her concurrence in *Farrar*.[2]  These three factors are: (1) the difference between the amount recovered and the damages sought; (2) the significance of the legal issue on which the plaintiff claims to have prevailed; and (3) the accomplishment of some public goal other than occupying the time and energy of counsel, court, and client.  *See also Barber v. T.D. Williamson, Inc.*, 254 F.3d 1223, 1229-1230 (10th Cir. 2001).

**a.  Difference Between the Amount Recovered and Amount Sought**

Plaintiff's counsel did not make a specific dollar request to the jury and there is no evidence before the Court as to Plaintiff's settlement demands before trial.[3]  The jury awarded Plaintiff the actual out-of-pocket costs of her psychological counseling.  Although it is a small award, the Court is not faced with  a disparity between a huge request for damages and the actual award.

---

[2]  506 U.S. at 121-122.

[3]  Defense counsel makes an unverified comment in the Response Brief as to the amount of "Plaintiff's last demand before trial", however this does not constitute admissible evidence and thus, will not be considered by the Court.

4

In measuring the relief recovered, this Court must accord some weight to Plaintiff's victory in obtaining a decision by the jury that Defendant subjected Plaintiff to a hostile work environment, in violation of Title VII. *Lippoldt*, 468 F.3d at 1223. *Lippoldt* noted that a finding that a plaintiffs' civil rights were violated, coupled with nominal damages of $1.00 (as opposed to the compensatory damages granted in this case), "may be sufficient for plaintiffs to recover fees for hours reasonably expended, depending upon the application of the other *Farrar* factors." *Id.* In other words, it is not just the quantum of relief actually obtained by Plaintiffs that is relevant. Despite Plaintiff's small dollar award, the jury vindicated the violation of Plaintiff's civil rights. This factor does not weigh against Plaintiff.

### b.  Significance of the Legal Issue on Which Plaintiff Prevailed

The second factor weighs in favor of Plaintiff. The fact that Plaintiff prevailed on the merits of her hostile work environment claim, rendering the City liable under Title VII and the New Mexico Human Rights Act, causing her damage, is significant. The summary judgment dismissal of many of Plaintiff's original claims, against all but one Defendant, does not diminish the importance of her prevailing at trial. *See Phelps v. Hamilton*, 120 F.3d 1126, 1132 (10th Cir. 1997)("That the plaintiffs prevailed on only one of their four underlying claims does not diminish the reasonableness of awarding some attorney's fees commensurate with their legal efforts in bringing that claim."). Plaintiff contends that she brought her claims not only to vindicate herself, but to stand up against the hostile environment that she and her female co-workers endured at the Defendant's 911 Emergency Call Center under Michael Padilla. (Reply at 5). Plaintiff succeeded on a significant issue in litigation which achieves some of the benefit she sought in bringing suit. The legal issue on which Plaintiff succeeded is significant enough for this factor to weigh in her

favor.

### c.  Accomplishment of a Public Goal

This factor is broadly interpreted by the Tenth Circuit and is satisfied where the "plaintiff's victory encourages attorneys to represent civil rights litigants, affirms an important right, puts the defendant on notice that it needs to improve, and/or provokes a change in the defendant's conduct." *Barber*, 254 F.3d at 1232-33. This factor examines whether the judgment vindicates important rights and deters future lawless conduct, as opposed to merely occupying the time and energy of counsel, the court, and the client. *Phelps*, 120 F.3d at 1132.  The Tenth Circuit has not required the judgment to order a policy change. *See Koopman v. Water Dist. No. 1*, 41 F.3d 1417, 1421 (10th Cir. 1994).

As for the public importance of this litigation, it has implications not just for employees of the City of Albuquerque's 911 Call Center, but for all City employees.  The City is now on notice that this type of hostile work environment is not to be tolerated.  In addition to this trial, another case involving similar complaints from two other female 911 Call Center employees was settled last year by the City.[4]  These two lawsuits consumed years of resources, with the City vigorously opposing each phase in the litigation.  Certainly the outcomes of both cases should have significant impact on management at the City of Albuquerque and should result in better compliance with Title VII by City employees in their supervisory roles in the future.

As a result of the jury's verdict in this case, the City is on notice that it must better educate its employees about sexual harassment in the workplace, and must promptly investigate any such claims.  The present and future employees of the City should benefit from the affirmation of

---

[4] *Webb v. City of Albuquerque*, No. 08-0411 (D.N.M., Vazquez, J.)

6

Plaintiff's rights.  "*Koopman* instructs us that what is controlling is Plaintiff's vindication of her civil rights and of important rights of her co-workers, even if she sought only a modest amount of damages." *Brandau v. State of Kansas*, 168 F.3d 1179, 1183 (1999).

The City  contends that no public goal was accomplished, because this verdict for Plaintiff will not result in policy changes at the City.  The gist of this argument is that undisputed evidence at trial indicated that appropriate and adequate policies were in place prior to the filing of Plaintiff's lawsuit, and  the City made appropriate investigation and took appropriate action, subsequent to the filing of this lawsuit (Resp. at 8).

This argument ignores the jury's verdict, and the findings that implicitly support it. The jury's finding of liability was necessarily premised upon a finding of negligence or vicarious liability by the City.  Negligence required a finding that the City actually knew or, in the exercise of reasonable care, should have known about the harassment, AND the City failed to take appropriate remedial or preventative action.  (Jury Instruction No. 14).  To establish negligence, Plaintiff was required to show that the harassment was known or communicated to a manager or supervisor OR that the harassment was so open and obvious that it should have been known to a management or supervisory level employee.  (Jury Instruction No. 15).  Under the second theory, that of vicarious liability, Plaintiff was required to show that Plaintiff's supervisor created a sexually hostile work environment for Plaintiff.  (Jury Instruction. No. 17).  The defense to vicarious liability required the jury to find that the City exercised reasonable care to prevent and promptly correct any sexually harassing behavior AND that Plaintiff unreasonably failed to take advantage of preventative or corrective opportunities which the City provided or to avoid harm otherwise.

Although it is unknown under which theory the jury imposed liability, it is clear that the jury concluded that the City did not take appropriate action to prevent and correct a hostile work

environment.  Given this jury verdict, the City's position that policies and procedures need no improvement is untenable and is an indication that the City is improperly discounting the import of this verdict.

After weighing all three factors, this Court concludes that Plaintiff Lopez achieved more than merely a technical or formal success under the *Farrar* factors and that attorney fees for reasonable hours expended shall be awarded.

### 2.  Amount of Fees – Lodestar Calculation

The next aspect of the Court's analysis is to determine whether or not the fees sought by Plaintiff are "reasonable."  As noted by the Tenth Circuit in *Lippoldt,* 468 F.3d at 1222, "[a] reasonable fee is the product of a reasonable rate in the relevant community multiplied by the number of hours reasonably spent on the litigation."  The product of this multiplication is called the lodestar.  The lodestar provides an "objective basis on which to make an initial estimate of the value of a lawyer's services."  *Hensley,* 461 U.S. at 433.  The district court may either accept the lodestar as the reasonable amount to award the prevailing party, or it may adjust the lodestar upward or downward, depending on the circumstances of the case.  *Id*. at 434.  There is no precise rule or formula for making these determinations.  If warranted, the district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to accord for limited success.  "The court necessarily has discretion in making the equitable judgment."  *Id*. at 436-437.  In reaching a conclusion as to what is a reasonable fee, "[o]ther factors are ... relevant, including the reasonableness of the fees in light of the success obtained, which requires the district court to consider 'the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.' "  *Praseuth v. Rubbermaid, Inc.*, 406 F.3d 1245, 1257 (10th

Cir. 2005)(quoting *Hensley,* 461 U.S. at 435).

The fee applicant "bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Case*, 157 F.3d at 1249 (quoting *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1201 (10th Cir. 1986)(quoting *Hensley*, 461 U.S. at 437).

### a.  Hourly Rates

In setting the hourly rate, a court should establish a rate based on the norm for lawyers of comparable skill and experience in private practice in the area in which the court sits, calculated as of the time the court awards the fee. *See Ramos v. Lamm*, 413 F.3d 546, 555 (10th Cir. 1983).  The hourly rate awarded should provide sufficient incentive to allow lawyers to "litigate such cases for a living rather than as occasional charity work." *Stokes v. City of Montgomery*, 706 F.Supp. 811, 817 (M.D.Ala.1988)(quoted in *Kelley v. City of Albuquerque*, 2005 WL 3663515 (D.N.M. 2005)).

The applicant bears the burden to show that the requested rates are reasonable, that is, they "are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Ellis v. University of Kansas Med. Ctr.*, 163 F.3d 1186, 1203 (10th Cir. 1998)(quoting *Malloy v. Monahan*, 73 F.3d 1012, 1018 (10th Cir. 1996)). When determining the appropriate rate to apply, the Court should base its hourly rate award on what the evidence shows the market commands for analogous litigation. *United Phosphorus, Ltd. v. Midland Fumigant, Inc*., 205 F.3d 1219, 1234 (10th Cir. 2000)(quoting *Case,* 157 F.3d at 1255).  The Court may not use its own knowledge to establish the appropriate hourly rate unless the evidence of prevailing market rates before the Court is inadequate. *Case*, 157 F.3d at 1257.  "[A] district court abuses its discretion when it ignores the parties' market evidence and sets an attorney's hourly rate using the rates it consistently grant[s]." *Id*. at 1255 (quotation marks and citation omitted).  The

9

"court must award *rates* compatible with competent, trustworthy evidence of the market." *Id*. at 1256 (emphasis in original).

Plaintiff's evidence consists of affidavits from attorneys of Robert J. Gorence (Ex. A), Louren Oliveros (Ex. B), Paul J. Kennedy (Ex. E), M.J. Keefe (Ex. F), and Jason Bowles (Ex. G). Plaintiff has also submitted affidavits from paralegals Laura Cotitta-Husler (Ex. C) and Summer Swagerty (Ex. D).

The City has submitted no evidence of market hourly rates from local attorneys and relies solely on two attorney fee awards granted in this judicial district in the years 2005 and 2007.

Mr. Gorence seeks an hourly rate of $300, and Ms. Oliveros seeks an hourly rate of $185. Defendant advocates for hourly rates of $225 and $150, for attorneys Gorence and Oliveros, respectively.

### (1) Hourly Rate for Mr. Gorence

The Court has examined Mr. Gorence's affidavit.  It states that he has been licensed to practice law in New Mexico since September 1983, and that he has practiced law continuously since that time (Ex. A, Gorence Aff. ¶¶ 2,3); that he served as an Assistant United States Attorney for 14 years, including 6 years as the First Assistant (*Id*. ¶ 4); that he has been in private practice since October 2000, practicing primarily in the areas of criminal defense, civil rights and personal injury work for plaintiffs, and that he has handled numerous types of other civil litigation in state and federal courts (*Id*. ¶ 5); that he has tried approximately 93 felony criminal cases and 6 civil cases – 5 of which were civil rights cases – and that he has settled other such cases subsequent to discovery and dispositive motions and prior to trial (*Id*. ¶ 6); that he was an adjunct professor of law in the area of trial practice at the University of New Mexico School of Law, and an instructor with

the National Institute of Trial Advocacy, from 1996 through 2006 (*Id*. ¶ 7); that in 2004, he was awarded the rate of $250.00 per hour by this Court in a civil rights case[5], and that his hourly rate has been $350.00 since 2008 in civil cases (*Id.* ¶ 9); that his hourly rate in criminal cases in which he is privately retained is $375.00 to $400.00 per hour (*Id.*); that he is personally knowledgeable regarding the market for attorneys in the Albuquerque area and that his hourly rates are within the market range for an attorney of his skill and experience (*Id.*); and that the rate of $300.00 is a conservative and reasonable rate, given the contingent risk of cases such as this (*Id.* ¶ 10).

Plaintiff has provided other proof from individuals familiar with the community market billing rate charged by attorneys of equivalent skill and experience  performing services of similar complexity.[6]  The affidavit of attorney Paul Kennedy states that he is personally knowledgeable regarding the market for attorneys in the Albuquerque area (Ex. E, Kennedy Aff., ¶ 7); that he is quite familiar with Mr. Gorence's skills and accomplishments as an attorney (*Id. ¶* 9); and that he is familiar with the issues involved in this case (*Id.* ¶ 11).  Mr. Kennedy states that Mr. Gorence is entitled to recover an hourly rate for litigation of this type in the amount of at least $300.00 per hour. Mr. Kennedy's affidavit refers to specific civil federal cases in this district in which he has been awarded hourly fees ranging from $200.00 per hour in 1992[7] and in 1999[8], to $275 in June[9] and

---

[5]  The Court notes that this attorney fee award was granted in *Marshall v. Roye, et al.*, No. 99cv1363 (2004 D.N.M.)(Hansen, J.).

[6]  These supplemental affidavits are important pieces of evidence, because something more than affidavits from Gorence and Oliveros is required to establish the prevailing market rate for attorney fees.  *Blum v. Stenson*, 465 U.S. 886, 895-96 n.11 (1984).

[7]  *See Reyes v. ITT Consumer Financial Corp.*, No. 90cv023 (D.N.M.1992)(Conway, J.).

[8]  *See Roth v. Bernalillo County Sheriff's Dept.*, No. 97cv1545 (D.N.M. 1998)(Deaton, M.J.).

[9]  *See Pencak v. Blakeney*, No. 02cv425 (D.N.M.2003)(Hansen, J.).

November[10] of 2003.  (*Id.* ¶ 6).  Mr. Kennedy's affidavit mentions a 2010 attorney fee award in a

civil rights case in which Judge Conway awarded the hourly rate of $300 to his law partner, who had

been in the practice of law since 1985.[11]   Mr. Kennedy states that since 2003, his hourly rate for

civil cases has been $450.00 per hour and that he has received fees at these hourly rates.  (*Id.* ¶ 7).

Plaintiff's submitted affidavits from M.J. Keefe (Ex. F) and Jason Bowles (Ex. G) similarly support

an hourly rate of $300.00 for Mr. Gorence.  These affidavits substantiate a range of fees awarded

in other cases and Mr. Gorence's qualifications.   Plaintiff has shouldered her burden of

demonstrating that $300.00 per hour for Mr. Gorence's services is reasonable.

To rebut this evidence, the City points to two cases in this judicial district in which lower

hourly rates were awarded to civil rights attorneys.[12]   In the earlier case, *Kelley v. City of*

*Albuquerque,*[13] No. 03cv507 (D.N.M.), Judge Browning granted Plaintiff's fee request for $200.00

and $250.00 per hour, in October 2005.[14]   In the second case, *Jackson v. Los Lunas Center,*[15] No.

87cv839 (D.N.M.), Judge Parker granted local attorneys up to $224.40 per hour four years ago.  The

City also argues that Mr. Gorence's experience is primarily in the field of criminal defense, that he

has relatively little experience in litigating civil rights cases, and that because this case is outside

his field of expertise, he should be awarded a lower hourly rate than he would be granted in a

criminal case.  (Resp. at 10).

---

[10] *See Chavez v. Thomas & Betts Corp.*, No. 01cv1314 (D.N.M.2003)(Puglisi, M.J.).

[11] *See Avila v. Ratchner*, No. 01cv349 (D.N.M. 2001)(Conway, J).

[12] Relying on these two cases, it is the City's position that the prevailing rate in this federal judicial district for civil rights attorneys range from $137.50 to $250.00 per hour.

[13] 2005 WL 3663515 (D.N.M. 2005).

[14] As noted above, Mr. Gorence was awarded an hourly rate of $250.00 by this Court in 2004.

[15] 489 F.Supp2d 1267 (D.N.M. 2007).

As in the *Kelley* case, the evidence the City has put forth is not enough to show that the hourly rate sought by Mr. Gorence is unreasonable. The City's limited objection to Mr. Gorence's hourly rates, and its reference to two other cases from this district, are insufficient evidence of unreasonableness of the hourly rate Plaintiff requests, particularly in light of the well-supported affidavits submitted by Plaintiff. The cases upon which the City relies are four and six years old, and do not reflect the current prevailing market rates in this district. The Court finds that $300.00 per hour is a rate commensurate with Mr. Gorence's level of expertise in the community and that it is a reasonable rate.

### (2) Hourly Rate for Ms. Oliveros

The Court has also examined the affidavit of Ms. Oliveros. It states that she graduated from law school in May 2001 (Ex. B, Oliveros Aff., ¶ 4); that her law practice is devoted to 75% civil litigation and 25% criminal defense (*Id.* ¶ 5); that she has served as lead counsel in nine bench trials and as second chair in nine jury trials, in both criminal and civil cases (*Id.*); that she has worked on eleven civil rights cases (*Id.* ¶ 6); that she was awarded the rate of $150.00 per hour by this Court in a civil rights case in 2004, and received $175.00 per hour for her services as a guardian *ad litem* in 2008 (*Id.* ¶ 7); and that her current hourly rate is $250.00 (*Id.* ¶ 8).

Plaintiff has provided other proof regarding a reasonable hourly rate for Ms. Oliveros. The affidavit of attorney Paul Kennedy states that he is well-acquainted with the experience and skill of Ms. Oliveros, that she has earned a well deserved reputation for aggressive representation of clients in civil and criminal litigation, and that she is a skilled and efficient researcher and writer (Ex. E., Kennedy Aff. ¶ 10); that based upon her experience, Ms. Oliveros is entitled to recover an hourly rate of at least $185.00 per hour (*Id.* ¶ 12). Plaintiff's submitted affidavits from M.J. Keefe (Ex. F)

13

and Jason Bowles (Ex. G) similarly support an hourly rate of $185.00 for Ms. Oliveros.

The City makes no specific objection to the requested hourly rate for Ms. Oliveros, but merely notes that she has practiced law since 2001. (Resp. at 10). One of the cases cited by the City, *Kelley v. City of Albuquerque*, granted a second-chair attorney with eleven years of experience the hourly rate of $200.00, in a decision written in 2005.

Plaintiff has carried her burden of establishing that the hourly rates charged by her attorneys are reasonable by providing substantial evidence in the form of affidavits to support a conclusion that these hourly rates are at the current market rate. The City failed to provide adequate, admissible evidence of current market rates to contradict the hourly rates Plaintiff proposes. The Court notes that Plaintiff's two attorneys have many years of legal experience, and the Court witnessed first-hand their competence and skill during the course of this litigation. The Court finds that the hourly rates sought by Plaintiff are reasonable.

### (3) Hourly Rate for Paralegals

Defendants do not object to the $75.00 hourly rate sought by Plaintiff for paralegals. The Court has considered the hourly rate and finds it to be reasonable.

### b. Plaintiff's Request for Number of Hours Reasonably Expended

To determine the hours Plaintiff reasonably expended pursuing this action, the Court must examine the reasonableness of total time reported by counsel and the time allotted to specific tasks. *Ramos v. Lamm*, 713 F.2d 546, 553-54 (10th Cir. 1983). The overriding consideration is whether the attorneys' hours were accurately reported, and necessary under the circumstances. Any reductions to the number of hours sought must be based on objections actually raised by the City. *Hensley,* 461

U .S. at 437.  To the extent that the City raises generalized objections, without any "evidence challenging the accuracy and reasonableness of the hours charged," such objections are denied. *Blum v. Stenson*, 465 U.S. 886, 892 n.5 (1984), quoted in *Martinez v. Roscoe*, 100 F.3d 121, 124 (10th Cir. 1996).  *See also Bell v. United Princeton Properties, Inc.*, 884 F.2d 713, 720 (3d Cir. 1989)(in order for a fee to be reduced, the opposing party must plead with specificity its objections).

Exhibit A-1 contains time sheets for Mr. Gorence, reporting 131.20 hours, beginning in August 2008, through the initial preparation of this attorney fee petition, in November 2010.  The majority of these hours (92.5 hours) were reported for the thirteen days prior to, and during, trial. Exhibit B-1 contains time sheets for Ms. Oliveros, reporting 304.95 hours, beginning in July 2007, through the initial preparation of Plaintiff's attorney fee petition, in December 2010.  Ms. Oliveros filed a supplemental request for attorney fees, reporting 11.2 hours, for time spent preparing a reply to the City's response to Plaintiff's motions for costs and fees.  (Docket No. 152; Ex. B-2).

### (1)  Objections from the City

The City objects to the number of hours reported for several reasons – first of all on the basis that Mr. Gorence's detail in his time sheets is "scant," and that the reporting by Ms. Oliveros is slightly more detailed, but also "deficient."  (Resp. at 11).  Acknowledging that a few entries are self-explanatory (*i.e.*, "Trial"), the City objects to other entries such as "trial preparation" for Mr. Gorence, and "client meetings," "telephone calls," and "reviews of email" by Ms. Oliveros.  The City contends that inadequate detail is present to enable the Court to determine how much of counsel's time was spent on work relating to the parties and claims that were dismissed prior to trial. (Resp. at 12).

Next, the City objects that many of Ms. Oliveros's billed hours appear to relate to a different

15

case[16] – a case that settled in mid-2010 for a lump sum payment that included payment of counsel's fees and costs (*See* Ex. 2 – *Webb* Settlement Agreement).  Specifically, the City objects that Ms. Oliveros has already received compensation in the *Webb* case for the following entries, yet also seeks compensation for the same 18.2 hours of work in this case:  2/24/09 (6 hours); 2/25/09 (6 hours); 4/21/09 (.1 hour); 6/23/09 (1.6 hours); 6/24/09 (2.2 hours); and 7/13/09 (2.3 hours).

The City next objects to 23.2 hours billed by Ms. Oliveros for time spent at trial, on the grounds that "Ms. Oliveros did not actively participate in the trial."  (Resp. at 12).  Specifically the City notes that Ms. Oliveros did not conduct voir dire, opening statements, direct or cross examination of any witnesses, or closing arguments. The City characterizes this case as being relatively simple, and not justifying the participation of two attorneys.  Finally, the City objects that other of Ms. Oliveros's billed hours appear excessive.  The only specific objection the City makes in this regard is that she billed in excess of 40 hours, from July 18, 2008 to September 3, 2008, to conduct research and to draft the Complaint.  The City suggests that the Court reduce these billings to the range of 5-10 hours.

### (2) Analysis of Reasonableness of Number of Hours Expended

The Court will first consider the City's specific objections regarding a lack of detail provided by Plaintiff's counsel in their respective time sheets.  The first specific objection is that Mr. Gorence simply listed "trial preparation," without any explanation. These entries began on October 16, 2010, ten days before trial.  Mr. Gorence reported 56 hours for pre-trial preparation, 24.4 of which were for meetings with the Plaintiff and two other main witnesses.  The other 13.3 hours of trial

---

[16]  *See Webb v. City of Albuquerque*, No. 08cv0411 (D.N.M.2008)(Vazquez, J.)

preparation were incurred during the course of the trial. Plaintiff's Reply Brief notes that Mr. Gorence has no pre-trial entries for reviewing the record of the case, including CM/ECF documents, depositions, voluminous discovery, and applicable case law, and that there were no entries from Ms. Oliveros for trial preparation. Plaintiff contends that disclosure of the manner and means of trial preparation would reveal confidential trial strategy.

Clearly 24.4 hours were spent meeting with the Plaintiff and two other main witnesses. These hours are reasonable and allowed. The 13.3 hours of preparation, incurred during the course of the trial, are reasonable and allowed. This leaves a balance of 18.3 hours, which the Court concludes is a reasonable amount of time for an attorney to prepare for a trial of this length and complexity.

The City also specifically objects to "client meetings," "telephone calls," and "reviews of email" by Ms. Oliveros, and appears to object on the grounds that some of this time could have been spent on work relating to parties and claims that were dismissed prior to trial. The objected-to entries amount to approximately 30.5 hours, which is not an unreasonable amount of time for counsel to spend meeting with her client, and communicating with her client and opposing counsel, over the course of nearly 3.5 years of litigation. This time was reasonably spent and will be allowed.

The next specific objection is that 18.2 hours are entries for matters in the *Webb* case. The Court has examined these entries, and notes that a 6 hour entry on February 24, 2009 states in part: "Review bates discovery and depositions in Webb/Sanchez;". The Reply Brief argues that none of Ms. Oliveros's time sheets now before the Court is for work performed in the *Webb* matter, however there is no actual *evidence* before the Court to explain the scope of work of this February 24 entry and on its face, it appears to relate to the *Webb* lawsuit only. The Court is unable to conclude that any of the other objected-to entries mentioned above are for matters in the *Webb* case.

17

Consequently, Ms. Oliveros's fee request will be reduced by six hours.

The City's next specific objection is that 23.2 hours billed by Ms. Oliveros for time spent at trial should be eliminated because "Ms. Oliveros did not actively participate in the trial." (Resp. at 12). It is accurate that Ms. Oliveros did not verbally participate at the trial, which was surprising because her time records demonstrate that she was primarily responsible for getting this case ready for trial, in terms of pleadings, motions and discovery. Ms. Oliveros was sole counsel for Plaintiff at the lengthy pretrial conference, and was apparently primarily responsible for extensive briefing, including that immediately prior to the trial. In other words, Ms. Oliveros was quite knowledgeable about all of the Court's rulings regarding admissibility of evidence, and the like. The Court observed during the trial that Ms. Oliveros was quite involved in the coordination of witnesses and evidence and corroboration with Mr. Gorence. Contrary to the City's contention, the Court did not find this case to be a simple one. It necessitated presentation by Plaintiff of cumulative proof sufficient to establish hostile work environment discrimination that was pervasive, permeating the workplace. Time spent by two attorneys at trial is not, *per se*, duplicative. The Court is persuaded by Plaintiff's argument that successful prosecution of her case required the attendance of two attorneys at trial. Furthermore, the Court finds that the number of hours reported by Ms. Oliveros during the time of trial is conservative. Actual reported time in trial, as per the Court's minutes, was approximately 17 ½ hours, and Ms. Oliveros reported only 5.7 hours more than that, including some research time on the Court's jury instructions. The Court finds that the 23.2 hours for attendance of Ms. Oliveros at trial is reasonable and will be allowed.

The City's final specific objection is that Ms. Oliveros billed in excess of 40 hours, from July 18, 2008 to September 3, 2008, to conduct research and to draft the Complaint. While the Court appreciates the value of considerable research and forethought prior to filing a complaint, the Court

concludes that 40 hours is excessive, and that 20 hours is reasonable and will be allowed.

The City has not taken issue with the amount of time spent by Plaintiff's counsel, as set forth in her Supplemental Motion for Attorneys Fees (Docket No. 152).  The Court notes that these types of fees are appropriate and independently concludes that the request for 11.2 hours is reasonable and will be allowed.

For the reasons stated above, the hours of Mr. Gorence will be not reduced and the hours of Ms. Oliveros will be reduced by 26 hours.

### (3) The City's Request for Adjustment to Number of Hours

The City seeks a substantial reduction of the Court's lodestar calculation, arguing that Plaintiff achieved only limited success.  Specifically, the City argues for a substantial reduction of fees, because all of the individual defendants and the vast majority of Plaintiff's claims were dismissed prior to trial, and because Plaintiff recovered only $1,200 in damages at trial.

The City contends that a lack of detail in Plaintiff's billing statements makes it impossible to accurately determine how much of counsel's time was spent pursuing parties and claims that were ultimately unsuccessful.  Furthermore, the City argues that this lack of detail should not operate to its detriment and should not prevent the Court from using its discretion to determine a reasonable fee.  The City suggests that, because 75% of the originally named defendants and claims were dismissed prior to trial, the lodestar calculation should be reduced by that percentage, and then ultimately urges a 85% to 95% reduction, given the small sum recovered at trial.

Plaintiff disputes the City's characterization of the jury verdict as being a "limited success." She notes that she never claimed large economic damages, and that she was in fact not awarded nominal damages, but rather, the exact amount of compensatory damages mentioned at trial, *i.e.*,

19

her actual out-of-pocket costs of counseling sessions, as supported by her testimony and that of Dr. Penland.

As noted by the Tenth Circuit recently in *Flitton v. Primary Residential Mortgage, Inc*., 614, F.3d 1173, 1176 (10th Cir. 2010), the lodestar calculation does not end the district court's inquiry when, as in this case,  the prevailing party succeeds on only some of her claims.  In such cases, two additional questions must be considered: (1) whether the plaintiff's successful and unsuccessful claims were related; and (2) whether the plaintiff's overall level of success justifies a fee award based on the hours expended by plaintiff's counsel.

### (a) Relationship Between Successful and Unsuccessful Claims

As to the first inquiry, this Court notes that five of Plaintiff's claims were dismissed by summary judgment.  The dismissed claims were:  violation of her equal protection rights because Padilla treated her differently because she was a woman (Count II); supervisory liability for Defendants Chavez and Schultz for violation of her civil rights (Count III); violation of her procedural due process rights because she was demoted (Count IV); disparate treatment based on her gender (Count V); and, retaliation after she reported sex discrimination (Count VII).

"Where the plaintiff has failed to prevail on a claim that is *distinct in all respects* from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee."  *Hensley*, 461 U.S. at 440 (emphasis added).  In the context of fee awards, the Tenth Circuit has held that claims are related if they are based on a common core of facts or are based on related legal theories.  *Jane L. v. Bangerter*, 61 F.3d 1505, 1512 (10th Cir. 1995).

20

The Court is unable to say that the five dismissed claims are unrelated to the two claims of hostile work environment on which Plaintiff prevailed.  These claims were based on related legal theories having to do with alleged deprivations of constitutional rights.  Much of Plaintiff's counsel's time was devoted generally to the litigation as a whole, making it difficult – and indeed impossible – for the Court to divide the hours expended on a claim-by-claim (or defendant-by-defendant) basis.  This lawsuit simply cannot be viewed as discrete claims.  *See Zurchel v. City and County of Denver*, 997 F.2d 730 (10th Cir. 1993).   Plaintiff won meaningful relief, as discussed above, and should not have her attorneys' fees reduced simply because the Court did not allow all of her claims to go to trial, or simply because the jury did not award a greater amount of compensatory damages.  The Tenth Circuit has held that arguments such as the City makes here are "legally indefensible in light of the fact that all of the unsuccessful claims were intertwined with the successful claims through a common core of facts or related legal theories."  *See Robinson,* 160 F.3d at 1283.

The unsuccessful claims raised by Plaintiff in her complaint were not distinct *in all respects* from the two claims that were presented to the jury.  The Court denies the City's request that it exclude the fees attributable to these other five causes of action.

## (b) Plaintiff's Overall Degree of Success

As instructed by *Hensley*, this Court must focus on the significance of the overall relief obtained by Plaintiff in relation to the hours reasonably expended on the litigation.  *Hensley*, 461 U.S. at 435.  The jury's verdict is significant, in that it conveys its finding that the 911 Call Center was the site of an illegal hostile work environment.  It serves as a vindication of Plaintiff's protected civil rights – a victory that serves an important purpose.  *See Gudenkauf v. Stauffer*

*Communications, Inc.*, 158 F.3d 1074, 1085 n.6 (10th Cir. 1998).  In addition to the $1,200 in compensatory damages, it is impossible to measure the intangible value of the verdict vindicating Plaintiff's constitutional rights.  The Court concludes that the relationship between this fee award and the extent of success is a reasonable one, that this level of success justifies the fees awarded herein, which the Court concludes were reasonably expended on this litigation.

In its discussion that "the most critical factor is the degree of success obtained," the *Hensley* Court stated that application of this principle is particularly important in complex civil rights litigation, such as those involving numerous challenges to institutional practices.  *Hensley*, 461 U.S. at 436.  Noting that this type of litigation is lengthy and demands many hours of lawyers' services, the Court stated that the range of possible success is vast.  Certainly the result in this case qualifies as significant overall relief.

The Court notes that this is not truly a nominal damage result, in that Plaintiff did not fail to prove an essential element of her claim, such as an actual compensable injury.  *See Farrar*, 506 U.S. at 115 ("When a plaintiff recovers only nominal damages because of his failure to prove an essential element of his claim for monetary relief [such as actual, compensable injury], the only reasonable fee is usually no fee at all...")(quoted in *Barber v. Williamson*, 254 F.3d at 1230)).

Furthermore, as discussed above, although this case proceeded to trial on only two claims out of seven and against only one  remaining Defendant, contrary to Defendant's arguments, the claims against all defendants were intertwined, and the Court is unable to conclude that the degree of success in this case was only in the 5-15% range.

Finally, as noted in the *Flitton* case, the Tenth Circuit has rejected the mechanical approach to assessing a plaintiff's degree of overall success that the City endorses.  *Flitton*, 614 F.3d at 1178; *see also Jane L.*, 61 F.3d at 1511 (reversing district court decision to reduce the lodestar by seventy-

five percent based on the plaintiff's success on only two out of eight claims, holding that "the district court must make a qualitative assessment to determine what less-than-perfect results are 'excellent,' justifying full recovery, or to what extent plaintiffs' 'limited success' should effect a reduction in the lodestar.").   Accordingly, the Court rejects the City's request for a straight percentage reduction.

## (c) Degree of Specificity in Billing Entries

The City seeks reduction of Plaintiff's attorney's fees due to allegedly vague and nondescript billing entries.   "Plaintiff's counsel, of course, is not required to record in great detail how each minute of his time was expended.  But at least counsel should identify the general subject matter of his time expenditures."  *Hensley*, 461 U.S. at 437 n.12.  The primary concern is whether or not this Court has the appropriate information with which to evaluate the propriety of the fee request based on the billing entries.  *See Crumpacker v. Kan. Dep't of Human Res.*, 474 F.3d 747, 757 (10th Cir. 2007)("The law does not require the district court to reduce its fee award where it finds no difficulty in evaluating the propriety of an attorney's billing.").

The Court has conducted a thorough review of the billing entries for attorneys Gorence and Oliveros, and has made two adjustments to the number of hours that will be awarded for the work of Ms. Oliveros.  Although not ideal, the remaining entries are sufficiently detailed to enable this Court to adequately review the fee application, and the Court concludes that it has appropriate information before it to be able to make a fair assessment of the reasonableness of Plaintiff's claimed fees, based on the majority of the billing entries she submitted.

## C.  Gross Receipts Taxes

Expenses not taxable in accordance with 28 U.S.C. § 1920 that are normally itemized and billed in addition to the hourly rate should be included in fee allowances if reasonable in amount. *Case*, 157 F.3d at 1257; *Ramos*, 713 F.2d at 559.  New Mexico requires professionals to pay gross receipts tax on their earnings.  Consequently, attorneys in New Mexico bill gross receipts tax to their clients.  The gross receipts taxes on Plaintiff's attorneys' fees will be awarded as part of the fee.

**WHEREFORE, IT IS HEREBY ORDERED** that the Motion and Memorandum in Support of Motion for Plaintiff's Attorneys' Fees filed December 1, 2010 (Docket No. 143) and Plaintiff's Motion to Supplement Motion for Attorney's Fees filed on January 10, 2011 (Docket No. 152) are **granted**, however the amount awarded differs from the amount sought.  Specifically, the City shall pay Plaintiff's paralegal and attorney fees in the amount of $94,650.2, plus gross receipts taxes in the amount of $6,625.51, for a total award of $101,275.76.

**IT IS FURTHER ORDERED** that the Clerk is directed to enter judgment against the City of Albuquerque in the amount of $101,275.76.

**IT IS SO ORDERED.**

_____
**SENIOR UNITED STATES DISTRICT JUDGE**

24